| | |
|---|---|
| GABRIEL MARTINEZ,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BRIAN PHELPS,<br><br>　　　　　Defendant. | Case No. 1:19-cv-00011-DAD-EPG<br><br>**ORDER FOR PLAINTIFF TO:**<br><br>**(1) FILE A FIRST AMENDED COMPLAINT;**<br><br>**OR**<br><br>**(2) NOTIFY THE COURT THAT HE WISHES TO STAND ON THE COMPLAINT, SUBJECT TO FINDINGS AND RECOMMENDATIONS TO THE DISTRICT JUDGE CONSISTENT WITH THIS ORDER**<br><br>(ECF No. 1)<br><br>**THIRTY (30) DAY DEADLINE** |

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

Gabriel Martinez ("Plaintiff"), proceeding *pro se* and in *forma pauperis*, commenced this action on January 3, 2019, by filing a Complaint against Brian Phelps ("Defendant"). (ECF No. 1.) Plaintiff alleges that Defendant, a police officer with the Fresno Police Department, assaulted, battered, and falsely imprisoned him. *Id.*

The Court has screened the Complaint and finds that Plaintiff fails to state a cognizable claim. The Court will grant Plaintiff leave to amend the Complaint, if he believes additional facts will establish a claim. If Plaintiff chooses to file an amended complaint, he may consult the

applicable legal standards provided below when drafting his amended complaint. In the alternative, Plaintiff may notify the Court that he wishes to stand on the Complaint, in which case the Court will issue findings and recommendations to the district judge assigned to the case recommending dismissal of the action consistent with this order.

## I. SCREENING REQUIREMENT

Under 28 U.S.C. § 1915(e)(2), the Court must conduct a review of a complaint brought *in forma pauperis* to determine whether it "state[s] a claim on which relief may be granted," is "frivolous or malicious," or "seek[s] monetary relief against a defendant who is immune from such relief." If the Court determines that the complaint fails to state a claim, it must be dismissed. *Id.* An action is frivolous if it is "of little weight or importance: having no basis in law or fact" and malicious if it was filed with the "intention or desire to harm another." *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005). Leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. *Id.* at 678.

In determining whether a complaint states an actionable claim, the Court must accept the allegations in the complaint as true, *Hosp. Bldg. Co. v. Trs. of Rex Hospital*, 425 U.S. 738, 740 (1976), construe *pro se* pleadings liberally in the light most favorable to the Plaintiff, *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000), and resolve all doubts in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342

(9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that on December 20, 2017, he was traveling in his property when Defendant Phelps stopped him. Plaintiff asked Defendant if there was an emergency. Defendant responded by requesting to see Plaintiff's driver's license. Plaintiff said he was not driving, but was traveling in his property. Defendant wrote Plaintiff a ticket for not producing his driver's license.

Defendant then called his superior, Ritchie B. O'Dell ("O'Dell"). O'Dell, while brandishing his firearm, demanded that Plaintiff get out of Plaintiff's property. Plaintiff was fearful, and called Fresno Police Department. O'Dell, while still brandishing his firearm, threatened to arrest Plaintiff if he did not sign the traffic ticket. Plaintiff told O'Dell to put the traffic ticket through the window. O'Dell responded that he would break the window, and attempted to pull the window. Defendant also brandished his firearm and made several attempts to break the window. O'Dell successfully broke the window.

Defendant and O'Dell arrested and searched Plaintiff. They did not have a warrant, and Plaintiff objected by stating that they were in violation of his due process rights under the Constitution. Defendant did not tell Plaintiff why he was being stopped or arrested, and Defendant did not advise Plaintiff of his rights. Defendant also had Plaintiff's property towed and impounded.

Defendant brought Plaintiff to the Fresno County Jail, where Defendant knew Plaintiff would be booked, fingerprinted, photographed, imprisoned for an indefinite amount of time, and possibly subjected to other types of assault and battery. Defendant made no attempt to bring Plaintiff before a magistrate or judge.

Plaintiff attaches to his Complaint a copy of a field report that he received a few months after his arrest. The field report states that Defendant was working in full uniform when he noticed a black GMC with a paper plate that read, "Certified Used Vehicles" attached to a plate underneath. Plaintiff was operating the vehicle. After an investigation, Defendant issued a citation

to Plaintiff for failing to present a valid license or proof of insurance. Plaintiff refused to sign the citation and refused to roll down the car window or open the car door. Defendant and O'Dell broke the car window, opened the car door, and arrested Plaintiff for delaying and obstructing an officer in the line of duty.

### III. DISCUSSION

#### A. Subject Matter Jurisdiction

It appears that this court does not have subject matter jurisdiction to adjudicate this matter. Federal courts can adjudicate only those cases which the United States Constitution and Congress authorize them to adjudicate. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "In civil cases, subject matter jurisdiction is generally conferred upon federal district courts either through diversity jurisdiction, 28 U.S.C. § 1332, or federal question jurisdiction, 28 U.S.C. § 1331." *Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064, 1068 (9th Cir. 2005); s*ee* 28 U.S.C. § 1331 ("[D]istrict courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States"); 28 U.S.C. § 1332(a)(1) (providing that district courts have original jurisdiction of civil actions between citizens of different States).

Here, Plaintiff only asserts state law causes of action—false imprisonment, assault, and battery—that do not arise under the Constitution, laws, or treaties of the United States, and the parties do not appear to be citizens of different States. Therefore, it appears the Court does not have subject matter jurisdiction of this action.

Plaintiff does mention, however, that he believes his due process rights were violated and that he was arrested without probable cause. Thus, in an abundance of caution, the Court will grant Plaintiff leave to amend his Complaint, if he believes additional facts will establish a cognizable claim arising under federal law. In drafting his amended complaint, Plaintiff may consult the following legal standards, which may or may not apply to Plaintiff's allegations.

#### B. Due Process Under the Fourteenth Amendment

"The Fourteenth Amendment protects individuals against the deprivation of liberty or property by the government without due process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir.1993). The Due Process Clause confers both procedural and substantive rights.

*Armendariz v. Penman*, 75 F.3d 1311, 1318 (9th Cir.1996) (en banc).

"[P]rocedural due process claims do not 'deal with the substance of the challenged decisions, but with the process by which they were reached.'" *Stamas v. Cnty. of Madera*, 795 F.Supp.2d 1047, 1077 (E.D. Cal. 2011) (quoting *Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1260 (9th Cir. 1994)). Furthermore, "[t]he due process clause does not prohibit every deprivation by the state of an individual's property. Only those deprivations carried out without due process are actionable . . . ." *Halverson*, 42 F.3d at 1260. To assert a procedural due process claim, a plaintiff must allege (1) a liberty or property interest protected by the Constitution; (2) a deprivation of that interest by the government; and (3) lack of due process of law with regard to that deprivation. *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir.2000).

Procedural due process requires, at a minimum, notice and an opportunity to be heard. *Goss v. Lopez*, 419 U.S. 565, 579 (1975). However, a due process claim is not cognizable when the deprivation concerns property and the state provides adequate post-deprivation remedies to protect a plaintiff's procedural due process rights. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding that deprivations of property do not violate the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available because "the state's action is not complete until and unless it provides or refuses to provide a suitable post-deprivation remedy").

Substantive due process refers to certain actions that the government may not engage in, no matter how many procedural safeguards it employs. *See County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998); *Blaylock v. Schwinden*, 862 F.2d 1352, 1354 (9th Cir.1988). "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994). There is no recognized substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause. *Id.* Furthermore, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these

claims.'" *Id.* at 273 (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Thus, the constitutionality of an arrest may be challenged only under the Fourth Amendment. *Id.* at 274 ("The Framers [of the Bill of Rights] considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it.).

### C.     Search and Seizure Under the Fourth Amendment

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. "[I]ts protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Willis*, 431 F.3d 709, 714 (9th Cir. 2005) As the Supreme Court explained in *Whren v. United States*:

> Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of this provision. *See Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1395, 59 L.Ed.2d 660 (1979); *United States v. Martinez–Fuerte*, 428 U.S. 543, 556, 96 S.Ct. 3074, 3082, 49 L.Ed.2d 1116 (1976); *United States v. Brignoni–Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975). An automobile stop is thus subject to the constitutional imperative that it not be "unreasonable" under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. *See Prouse*, supra, at 659, 99 S.Ct., at 1399; *Pennsylvania v. Mimms*, 434 U.S. 106, 109, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977) (per curiam).

517 U.S. 806, 809–10 (1996).

"[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977). The officer may also conduct "ordinary inquiries incident to [the traffic] stop." *Illinois v. Caballes*, 543 U.S. 405, 408 (2005). "Typically, such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and

6

responsibly." *Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015) (internal citation omitted).

An arrest during a traffic stop without a warrant violates the Fourth Amendment if the arrest is not supported by probable cause. *Maryland v. Pringle*, 540 U.S. 366, 370 (2003); *Torres v. City of Los Angeles*, 548 F.3d 1197, 1207 (9th Cir. 2008); *Blankenhorn v. City of Orange*, 485 F.3d 463, 470–71 (9th Cir. 2007). Probable cause exists when "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime." *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986). An officer may arrest a suspect for a "very minor criminal offense" when the officer has probable cause to believe the offense was committed in the officer's presence. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1094–95 (9th Cir. 2006).

Pursuant to Cal. Penal Code § 148(a), "Every person who willfully resists, delays, or obstructs any public officer . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment." An individual's resistance during a traffic stop may provide probably cause to arrest him for violation of Cal. Penal Code § 148(a). *See Field v. Cty. of Orange*, No. SACV06595PSGANX, 2008 WL 11422660, at *2 (C.D. Cal. Apr. 30, 2008), *aff'd*, 349 F. App'x 222 (9th Cir. 2009).

### D. Excessive Force Under the Fourth Amendment

A claim of excessive force while making an arrest is properly analyzed under the Fourth Amendment. *Scott v. Harris*, 550 U.S. 372, 381 (2007); *Graham v. Connor*, 490 U.S. 386 (1989). "Under the Supreme Court's leading case, *Graham v. Connor*, determining whether the use of force to effect a seizure was unreasonable under the Fourth Amendment—and therefore unlawful—requires 'a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946–47 (9th Cir. 2017) (citing *Graham*, 490 U.S. at 397). To state a claim of excessive force, a plaintiff must allege facts

showing that the officer's conduct was "objectively unreasonable in light of the facts and circumstances confronting them." *Graham*, 490 U.S. at 397. In determining whether an officer's conduct is objectively unreasonable, the Court must "balance the gravity of the intrusion on the individual against the government's need for that intrusion to determine whether it was constitutionally reasonable." *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003). In evaluating reasonableness, the court considers factors including "(a) the severity of the suspect's alleged crime; (b) whether the suspect posed an immediate threat to the officers' safety; (c) whether the suspect was actively resisting arrest or attempting to escape." *Graham*, 490 U.S. at 396.

### E. Favorable Termination Rule

The Court also notes that this action may be barred by the favorable termination rule. In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the United States Supreme Court held that to recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a § 1983 plaintiff must prove that the conviction or sentence was reversed, expunged, or otherwise invalidated. The favorable termination rule in *Heck* preserves the requirement that claims which, if successful, would necessarily imply the invalidity of a conviction or sentence, must be brought by way of a petition for writ of habeas corpus, after exhausting appropriate avenues for relief, including direct appeal. *Muhammad v. Close*, 540 U.S. 749, 750-751 (2004).

"The applicability of the favorable termination rule turns solely on whether a successful § 1983 action would necessarily render invalid a conviction, sentence, or administrative sanction that affected the length of the prisoner's confinement." *Ramirez v. Galaza*, 334 F.3d 850, 856 (9th Cir. 2003). In *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996), the court held that, "if a criminal conviction arising out of the same facts and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." But if the "action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Heck*, 512 U.S. at 487.

It is unclear from the allegations in the Complaint whether Plaintiff has been convicted of an offense and seeks to challenge the validity of his conviction or sentence. Nevertheless, Plaintiff is advised that if he seeks to challenge his criminal conviction or sentence, he must appeal that conviction through the state court, and may file a petition for writ of habeas corpus in federal court only after exhausting appropriate avenues for relief.

### IV. CONCLUSION AND ORDER

The Court finds that the Complaint fails to state a cognizable claim upon which relief may be granted. Under Rule 15(a) of the Federal Rules of Civil Procedure, "leave to amend shall be freely given when justice so requires." Accordingly, the Court will provide Plaintiff leave to file an amended complaint curing the deficiencies identified above. *Lopez v. Smith*, 203 F.3d 1122, 1126-30 (9th Cir. 2000).

Plaintiff is advised that although he has been given the opportunity to amend, it is not for the purpose of changing the nature of this suit or adding unrelated claims. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff is further advised that an amended complaint supersedes the original complaint, *Lacey v. Maricopa County*, 693 F.3d. 896, 907 n.1 (9th Cir. 2012) (*en banc*), and must be complete in itself without reference to the prior or superseded pleading, Local Rule 220. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Plaintiff may also choose to stand on the Complaint, in which case the Court will issue findings and recommendations to the assigned district judge recommending that the case be dismissed consistent with this order.

Based on the foregoing, it is **HEREBY ORDERED** that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint (non-prisoner complaint) form;

2. Plaintiff may file a First Amended Complaint curing the deficiencies identified by

the Court in this order if he believes additional true factual allegations will state a claim, within **thirty (30) days** from the date of service of this order;

3. If Plaintiff chooses to file an amended complaint, Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 19-cv-00011-DAD-EPG;

4. Alternatively, within **thirty (30) days** from the date of service of this order, Plaintiff may notify the Court that he wishes to stand on the Complaint, subject to this Court issuing findings and recommendations to the assigned district judge recommending that the case be dismissed for failure to state a claim; and

5. If Plaintiff fails to file an amended complaint or notify the Court that he wishes to stand on this complaint within **thirty (30) days** from the date of service of this order, the Court will issue findings and recommendations to the assigned district judge recommending that Plaintiff's case be dismissed for failure to state a claim and failure to comply with a Court order.

IT IS SO ORDERED.

Dated: **February 4, 2019**         /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE